UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER A. ZIAVRAS,<br>      Plaintiff<br><br>v.<br><br>STANDARD LIFE INSURANCE<br>COMPANY,<br>      Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 04-11542 GAO |

## MEMORANDUM IN SUPPORT OF DEFENDANT STANDARD LIFE INSURANCE COMPANY'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendant Standard Life Insurance Company ("Standard") moves for an order restraining plaintiff Peter A. Ziavras from transferring, spending or otherwise disposing of social security disability income benefits in the amount of $22,089.00 held by him in escrow. Standard also moves that upon expiration of the restraining order the Court enter a preliminary injunction similarly preventing Mr. Ziavras from transferring, spending or otherwise disposing of the social security disability income benefits in his possession.

### INTRODUCTION

Mr. Ziavras sues Standard for declaratory judgment and unfair and deceptive trade practices under Chapter 93A arising out of Standard's May 10, 2004 termination of long term disability ("LTD") benefits paid to him under an employee welfare benefit plan ("Plan") insured by a Standard group long term disability policy ("Policy").

Mr. Ziavras last worked as a department manager at Stop & Shop Supermarket on November 11, 2001. He has not returned to work reportedly due to "Spinal Infarcture and Myelopathy." Standard answered the complaint, indicating that the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001 et seq ("ERISA"), preempts and

bars plaintiff's state and common law claims. Standard maintains that its decision to terminate LTD benefits effective May 10, 2004 was reasonable and consistent with ERISA and the terms of the Policy and Plan. Standard has also asserted a counterclaim for the recovery of an overpayment of LTD benefits resulting from plaintiff's receipt of a lump-sum retroactive Social Security Disability Income benefit award. Standard now seeks to enjoin temporarily and preliminarily Mr. Zaivras from disbursing funds from that Social Security award.

## FACTS

On or about October 1, 1999, Standard issued the Policy to Ahold USA, Inc. to insure LTD benefits under the Plan. Affidavit of Patricia Roberts ("Roberts Aff."), ¶ 2. Mr. Ziavras was, at all material times, a participant in the Plan. Id. Standard was, at all material times, a claim fiduciary of the Plan. Id.

The Policy confers absolute discretion on Standard to decide claims for LTD benefits submitted pursuant to the Policy. It provides that Standard, acting as a claim fiduciary, has "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and to resolve all questions arising in the administration, interpretation and application of the Group Policy." Id. at ¶ 3, Exhibit A thereto, p. 18.

The Policy contains a two-tier definition of disability. Id. at ¶ 4, Ex. A, p.7. During the first twenty-four months for which LTD benefits are payable[1], the Policy provides:

> You are disabled. . .if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder you are unable to perform with reasonable continuity the Material Duties of your Own Occuption and You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

---

[1] The original policy provided a thirty six-month "own occupation" period. A subsequent policy amendment effective in 2000 reduced the "own occupation" period to twenty-four months.

2

Id. After the first twenty-four months, the Policy requires that the insured be disabled from all occupations. Id., Ex. A, p. 8  It defines disability for this period as follows:

> You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Id.

The Policy further defines LTD benefits as "60% of the first $43,333 of your Predisability Earnings, reduced by Deductible Income." Id. at ¶ 5, Ex. A p. 2. "Deductible Income" is defined to include: "Any amount you, your spouse, or your child under age 18 receive or are eligible to receive because of your disability or retirement under: a. The Federal Social Security Act;..." Id., Ex. A, pp. 11-12. The Policy further provides, in part:

> D.  Overpayment Of Claim
>
> We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us......

Id. at ¶ 6, Ex. A, p. 14.

### Termination of LTD Benefits

On April 11, 2002, Standard received an application from Mr. Ziavras for LTD benefits under the Plan. Id. at ¶ 7.  Mr. Ziavras claimed to have been disabled since November 12, 2002 due to Spinal Infarcture and Myelopathy. Id.  Standard paid LTD benefits of $2210 monthly to Mr. Ziavras for the period of May 11, 2002 through May 10, 2004 pursuant to the terms of the Policy and Plan. Id. at ¶ 8.

On August 28, 2002, Dr. Gregory Allam, the insured's primary treating neurologist, reported that Mr. Ziavras could return to work in an office where he does minimal lifting and walking around or only occasional walking. Id. at ¶ 9, Exhibit B thereto.  On

3

December 23, 2003 Standard conducted a Vocational Skills Assessment of Mr. Ziavras. It identified three acceptable alternative occupations that Mr. Ziavras could perform—investigator, claim examiner, and claim adjuster. Id. at ¶ 10, Exhibit C thereto. In a January 14, 2004 letter, Standard notified Mr. Ziavras that it was terminating LTD benefits effective May 10, 2004. Id. at ¶ 11, Exhibit D thereto. Based on the Dr. Allam's records and the Vocational Skills Assessment, Standard concluded that Mr. Ziavras was no longer disabled under the Policy definition. Id.

Plaintiff's counsel, Robert Kalis, responded on April 28, 2004 making a formal demand for settlement under the Massachusetts Consumer Protection Act. Id. at ¶ 12. Standard construed Mr. Kalis's letter as a demand for administrative review, which it then initiated. Id.

In March, 2004, Standard asked its consulting neurologist, Dr. Elias Dickerman, to review additional medical records provided by Mr. Ziavras. On March 25, 2004, Dr. Dickerman concluded that Mr. Ziavras was capable of full time sedentary activities. Id. at ¶ 13, Exhibit E thereto. Standard on June 14, 2004, after completing its administrative review, upheld the decision to terminate LTD benefits effective May 10, 2004 again based largely on Dr. Dickerman's analysis and the vocational assessment. Id. at ¶ 15.

**Overpayment of LTD Benefits**

Standard, on multiple occasions, advised Mr. Ziavras that receipt of social security disability income benefits could result in an overpayment of LTD benefits under the Plan and Policy and requested that he sign a Repayment Agreement. Id. at ¶ 16. Mr. Ziavras on February 14, 2004 signed a Repayment Agreement, which provides, in part:

> I understand that the receipt of or eligibility for other income or benefits may result in an overpayment of LTD benefits paid to me and that I am responsible for repaying any overpayment of LTD

4

benefits. I agree to immediately repay Standard Insurance Company for any such overpayment.

Id. at ¶ 17, Exhibit F thereto.

On or about May 1, 2004, Mr. Ziavras was awarded disability benefits by the Social Security Administration in the amount of $1,566.70 per month, effective March through November, 2003. Id. at ¶ 18. In December, 2003, the Social Security Administration increased his benefit to $1,599.00 per month as a result of a Cost of Living Adjustment. Id. On May 1, 2004, Mr. Ziavras received a total of $22,089.00 from the Social Security Administration for the period of March, 2003 through April, 2004. Id. Because Mr. Ziavras received benefits from Standard through May 10, 2004 without a deduction for the original monthly award amount of $1566.00 per month, as provided by the Policy, Mr. Ziavras received an overpayment from Standard in the amount of $22,483.22. Id. He has not repaid this amount to Standard. Id. According to Mr. Ziavras, he has "isolated said sum [$22,089.00] and is holding it in escrow pending determination of this Court as to how and when it should be paid." Complaint at ¶ 7.

## ARGUMENT

### A. ERISA Pre-empts and Bars Plaintiff's State and Common Law Causes of Action

Standard issued its Policy to Ahold USA, Inc. that insured LTD benefits offered through an employee welfare benefit plan, as that term is defined by ERISA. 29 U.S.C. § 1002(1). The Plan is subject to and regulated by ERISA. ERISA preempts all state law claims in plaintiff's complaint and provides the exclusive remedies for claims seeking benefits from employee welfare benefit plans. ERISA, §§502(a)(1)(B), 514, 29 U.S.C. §§1132(a)(1)(B) and 1144; see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987). Likewise, Standard's counterclaim to recover the overpayment of LTD benefits is governed by ERISA. See Onofreiti v.

Metrpolitan Life Ins. Co., 320 F. Supp. 2d 1250, 1256 (M.D.Fla. 2004).

### B.   Standard for Granting a Temporary Restraining Order

The purpose of preliminary relief is to preserve the status quo so that upon full adjudication on the merits the court can more effectively remedy any discerned wrongs. Rarities Grp., Inc. v. Karp, 98 F. Supp. 2d 96, 104 (D.Mass. 2000). In deciding whether to grant a temporary restraining order or a preliminary injunction, the court weighs the following four factors: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities; and (4) the effect on the public interest of a grant or denial of the injunction. Largess v. Supreme Judicial Court for the State of Massachusetts, 317 F. Supp. 2d 77, 80-81 (D. Mass. 2004); Rarities Group., 98 F. Supp. 2d at 104 (D.Mass. 2000). The *sina qua non* is whether the movant is likely to succeed on the merits. Largess at 81.

### 1.   Likelihood of Success on the Merits

A temporary restraining order should be granted because Standard is likely to succeed on the merits of Mr. Ziavras' claim for LTD benefits and on Standard's counterclaim to recover the repayment of LTD benefits.

The Policy grants Standard, a fiduciary of the Plan, discretionary authority to control and manage the Policy, to administer claims, and to interpret the Policy and to resolve all questions arising in the administration, interpretation and application of the Policy. Roberts Aff., ¶ 3, Exhibit A thereto, p. 18. Consequently, Standard's decision to terminate benefits will likely be reviewed under the deferential arbitrary and capricious standard. Firestone v. Bruch, 489 U.S. 101 (1989); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998). Reasoned

6

denials of benefits that are supported by substantial evidence will survive review under this standard. Doyle, 144 F.3d at 184. Substantial evidence exists where the evidence is reasonably sufficient to support the decision. Id.

Standard's decision to terminate LTD benefits was neither arbitrary nor capricious under the facts of this case. By May 10, 2004, Mr. Ziavras had received LTD benefits for twenty-four months. He was thereafter subject to a more stringent definition of "disabled." In order to qualify for LTD benefits beyond the initial twenty-four months, he must be unable to perform *any* occupation.

The early treatment records of Dr. Gregory Allam, the plaintiff's treating physician, indicate that although Mr. Ziavras could not return to his previous occupation, he could work in a sedentary capacity. For example, Dr. Allam concluded on August 28, 2002 that Mr. Ziavras could return to work in an office where he does minimal lifting and walking around or only occasional walking. Roberts Aff., ¶ 9, Exhibit B thereto. It is only in his later treatment notes that Dr. Allam suggests Mr. Ziavras is not able to work in any capacity. Not only is this conclusion inconsistent with his earlier statements, it is not supported by the evidence. Mr. Ziavras' medical records generally show steady improvement over the course of treatment.

Moreover, Standard's December 23, 2003 Vocational Skills Assessment of Mr. Ziavras identified three sedentary to light duty occupations that Mr. Ziavras could then perform—investigator, claim examiner, and claim adjuster. Id. at ¶ 10, Exhibit C thereto.

Based on this evidence, Standard concluded that Mr. Ziavras no longer met the Policy definition of disabled as of May 10, 2004. Id. at ¶ 11. In a January 14, 2004 letter, it notified Mr. Zavras that it was terminating LTD benefits effective May 10, 2004, when the Policy definition of "disabled" changed from an "own occupation" to an "any occupation"

standard. Id., Exhibit D thereto.

On March 25, 2004, Standard's consulting neurologist, Dr. Elias Dickerman, reviewed additional records provided by Mr. Ziavras and concluded that he was capable of full time sedentary activities. Id. at ¶ 13, Exhibit E thereto. Given the conclusions of Mr. Ziavras' own neurologist, Standards' consulting neurologist, and the results of the Vocational Skills Assessment, Standard's decision to terminate benefits was reasonable and supported by substantial evidence.

With respect to Standard's counterclaim to recover its overpayment of LTD benefits, it is clear that Standard is entitled to a constructive trust or equitable lien on the social security disability income benefits Mr. Ziavras now possesses.

ERISA provides that "a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). As a fiduciary of the Plan, Standard may seek equitable relief to recover the excess LTD benefits paid to Mr. Ziavras in violation of the Plan. Under § 1132(a)(3), Standard has no action at law to recover these benefits. Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 213-214 (2002).

In its counterclaim, Standard seeks repayment of the LTD benefits. An action for restitution is equitable and therefore permitted under § 1132(a)(3), when it seeks the return of particular funds or property that (a) can be traced to the defendant's possession; (b) belongs in good conscience to the plaintiff; and (c) has not been dissipated. Knudson, 534 U.S. at 213-

214. Mr. Ziavras admits in his complaint that the funds are in his possession and control. He has "isolated said sum [$22,089.00] and is holding it in escrow pending determination of this Court as to how and to whom it should be paid." Complaint at ¶ 7. The funds that Standard seeks are thus traceable to Mr. Ziavras' possession and have not been dissipated.

Moreover, the award of social security benefits belongs in good conscience to Standard. The Policy unambiguously provides that LTD benefits are offset by any social security disability benefits. Roberts Aff., ¶ 6, Ex. A, p. 14. It specifically states that Mr. Ziavras must refund any overpayment of his LTD benefits. Id. Mr. Ziavras also signed a Repayment Agreement in which he explicitly agreed to immediately repay any amount of overpaid benefits. Id. at ¶ 17, Exhibit F thereto.

Mr. Ziavras was awarded social security benefits for the period of March 2003 through April 2004, and $1,599 per month thereafter. Id. at ¶ 18. He received full LTD benefits for this same period. The result is an overpayment of $22,483.22 that he has not repaid. Id. Regardless of whether this Court ultimately concludes that Mr. Ziavras is entitled to LTD benefits after the May 10, 2004 termination, the social security benefits now held in escrow must be repaid to Standard.

### 2. **Irreparable Harm**

It cannot be disputed that Standard will be irreparably harmed if the Court does not enter an order restraining Mr. Ziavras from disposing of the social security benefits. While the Court is deciding the merits of Mr. Ziavras' claim and Standard's counterclaim, there is a significant risk that Mr. Ziavras will spend the money he now holds. If Mr. Ziavras disposes of

these funds, they may no longer be traceable and Standard will be left with no remedy.[2]

Knudson is clear that under § 1132(a)(3) a fiduciary may only bring an action for restitution in equity in the form of a constructive trust or equitable lien where the money or property identified as belonging in good conscience to the fiduciary can clearly be traced to particular funds or property in the participant or beneficiary's possession. Knudson, 534 U.S. at 213. Once the property or funds have been dissipated, the action is no longer equitable and is barred. Id. at 213-214. Under § 1132(a)(3), Standard is limited to equitable relief in its effort to recover the overpayment. It has no other remedy at law. If the equitable nature of Standard's action is destroyed by Mr. Ziavras' disposal of the social security funds, Standard will have no other means of recovering the overpayment.

As a general rule, the possibility of monetary injury does not constitute irreparable harm. Micro Networks Corp. v. HIG Hightec, Inc., 188 F. Supp. 2d 18, 22 (D. Mass. 2002). "A plaintiff, nevertheless can establish irreparable injury by showing that without equitable relief there is a substantial probability 'that upon final resolution of the action, the parties cannot be returned to the positions they previously occupied." Micro Networks, 188 F. Supp. 2d at 22, quoting Brenntag Int'l Chemicals, Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999). The First Circuit has recognized the propriety of a preliminary injunction where the relevant funds or assets in which the party has an equitable interest are in danger of depletion and dissipation. Id.; see also, Teredyne, Inc. v. Mostek Corp., 797 F. 2d 43, 52 (1st Cir. 1986).

Since Knudson, courts in the First and other circuits have granted extraordinary relief in the form of temporary restraining orders and preliminary injunctions to prevent funds in

---

[2] For this reason, it is appropriate for Standard to seek relief and for the Court to issue a temporary restraining order on an ex parte basis.

10

which a beneficiary has an equitable interest from being dissipated while litigation between ERISA plans and their beneficiaries proceed. See, e.g., Mank ex. rel. Hannaford Health Plan v. Green, 297 F. Supp. 2d 297, 305 (D.Me. 2003); Wellmark v. Deguara, 257 F. Supp. 2d 1209, 1211 (S.D.Iowa 2003). Preliminary injunctive relief is necessary in these cases to preserve a fiduciary's equitable remedy against a beneficiary. Mank, 297 F. Supp. 2d at 304. Without it, that equitable right will be irretrievably lost. Id.

Standard has an equitable interest in the social security benefits in Mr. Ziavras' possession. They are clearly funds that are in danger of depletion and dissipation. At present there is nothing preventing Mr. Ziavras from spending his benefits. Although Mr. Ziavras states in his complaint that he will hold the funds in escrow until the overpayment issue is resolved, he has great incentive under Knudson to dispose of the funds before the Court decides the merits of Standard's counterclaim. Should he do so, Standard would be left without any way to recover its overpayment. The potential for Standard to be irreparably harmed if the Court does not enter an order restraining Mr. Ziavras from spending the social security benefits is great.

### 3. Balance of Equities

In balancing the equities, the court looks at that hardship to the nonmovant if the restraining order issues, as contrasted with the hardship to the movant if interim relief is withheld. Largess at 81. The hardship to Mr. Ziavras will be minimal if the Court issues a temporary restraining order. He will be unable to spend his social security disability income benefits, but these funds will remain in his possession.[3] According to Mr. Ziavras, however, the funds have been already been placed in escrow pending the outcome of this litigation. Complaint

---

[3] For this reason, the Court should not ask Standard to post security pursuant to F.R.C.P. 65(c).

11

at ¶ 7. An order restraining Mr. Ziavras from disposing of these funds will not harm him because it will "merely maintain the status quo until a final determination can be made." Mank, 297 F. Supp. 2d at 305.

On the other hand, there will be severe hardship to Standard if a temporary restraining order does not issue. Mr. Ziavras will be left free to dispose of the funds at any time. If those benefits are spent, Standard's restitution claim will be barred under Knudson. Although Mr. Ziavras has set the funds aside in escrow, this is no guarantee that he will not spend them over the course of the litigation. A temporary restraining order is absolutely necessary to insure that the funds remain identifiable and traceable to Mr. Ziavras. Without an order, the funds will be left vulnerable to depletion.

### 4. Public Interest

A temporary restraining order would not disserve the public interest. Utility Contractors Ass'n of New England, Inc. v. City of Worcester, 236 F. Supp. 2d 113, 122 (D. Mass. 2002). It would simply preserve the status quo so that upon full adjudication on the merits the Court can more effectively remedy any discerned wrongs. "The public at large benefits from preserving the status quo." Mank, 297 F. Supp. 2d at 305. A temporary restraining order is even more appropriate where, as here, it will preserve a party's only available remedy.

The Court should grant an order restraining Mr. Ziavras from disposing of the social security benefits. Standard is likely to succeed on the merits of Mr. Ziavras' declaratory judgment claim under deferential review of its reasoned and supported decision to terminate LTD benefits. Moreover, Standard is clearly entitled to repayment of the social security benefits Mr. Ziavras has received in light of the Policy terms and the Repayment Agreement he signed. If the Court does not restrain Mr. Ziavras from spending the benefits, Standard will lose its

12

equitable remedy when those funds are disbursed. The burden of such an order would be minimal to Mr. Ziavras in comparison to the burden on Standard if an order is not issued. It is in the public interest to preserve the status quo of these two parties while this litigation is resolved.

## CONCLUSION

For the foregoing reasons, Standard Life Insurance Company respectfully requests that the Court enter an order restraining Plaintiff Peter A. Ziavras from disbursing the social security benefits he now holds in escrow. If the Court enters such an order, Standard also requests that upon expiration of that order, the Court enter a preliminary injunction further enjoining Mr. Ziavras from disposing of the social security benefits.

/s/ Brooks R. Magratten

Brooks R. Magratten, Esq.
BBO# 650393
VETTER & WHITE
Attorneys for Defendant
Standard Life Insurance Company
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

Dated: August 20, 2004