UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER A. ZIAVRAS,<br>    Plaintiff<br><br>v.<br><br>STANDARD LIFE INSURANCE COMPANY,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 04-11542 GAO |

### AFFIDAVIT OF PATRICIA ROBERTS

STATE OF OREGON         )
                                     ) ss:
COUNTY OF MULTNOMAH    )

Patricia Roberts, being duly sworn, says:

1. I am Patricia Roberts of Standard Life Insurance Company ("Standard"). I am employed as an Associate Disability Benefits Analyst. I am familiar with a claim by Peter A. Ziavras for long term disability ("LTD") benefits under a Standard group long term disability policy no. 637511-A ("Policy").

2. On or about October 1, 1999, Standard issued the Policy to Ahold USA, Inc. to insure LTD benefits under an employee welfare benefits plan ("Plan"). Mr. Ziavras was, at all material times, a participant in the Plan. Standard was, at all material times, the claim fiduciary of the Plan.

3. The policy provides that Standard, as fiduciary of the Plan, has "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and to resolve all questions arising in the administration, interpretation and application of the Group Policy." A true and accurate copy of the Policy is attached hereto as Exhibit A.

4. The Policy contains a two-tier definition of definition of disability. Exhibit A. During the first twenty-four months for which LTD benefits are payable, the Policy provides:

> You are disabled. . .if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder you are unable to perform with reasonable continuity the Material Duties of your Own Occuption and You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

Id. After the first twenty-four months, the Policy requires that the insured be disabled from all occupations. Id. It defines disability as follows:

> You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Id.

5. The Policy further defines LTD benefits as "60% of the first $43,333 of your Predisability Earnings, reduced by Deductible Income." Id. "Deductible Income" is defined to include: "Any amount you, your spouse, or your child under age 18 receive or are eligible to receive because of your disability or retirement under: a. The Federal Social Security Act;..." Id.

  6. The Policy further provides, in part:

  D. Overpayment Of Claim

  We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us……

Id.

  7. On April 11, 2002, Standard received an application from Mr. Ziavras for LTD benefits under the Plan. Mr. Ziavras claimed to have been disabled since November 12, 2002 due to Spinal Infarcture and Myelopathy.

  8. Standard approved his claim and paid LTD benefits of $2210 monthly to Mr. Ziavras from May 11, 2002 until May 10, 2004.

  9. On August 28, 2002, Dr. Gregory Allam, the insured's primary treating physician, reported that Mr. Ziavras could return to work in an office where he does minimal lifting and walking around or only occasional walking. A true copy of Dr. Allam's August 28, 2002 notes are attached as Exhibit B.

  10. On December 23, 2003 Standard conducted a Vocational Skills Assessment of Mr. Ziavras. It identified three sedentary to light duty occupations that Mr. Ziavras was capable of performing—investigator, claim examiner, and claim adjuster. A true and accurate copy of the Vocational Skills Assessment is attached hereto as Exhibit C.

  11. In a January 14, 2004 letter, Standard notified Mr. Ziavras that it was terminating LTD benefits effective May 10, 2004. Based on the medical records of Mr. Ziavras' treating physician and the Vocational Skills Assessment, Standard concluded that he was no longer disabled under the Policy definition. A true and accurate copy of the January 14, 2004 letter is attached hereto as Exhibit D.

12. Plaintiff's counsel, Robert Kalis, responded on April 28, 2004 making a formal demand for settlement under the Massachusetts Consumer Protection Act. Standard construed Mr. Kalis's letter as a demand for administrative review, which it then initiated.

13. In March, 2004 Standard asked its consulting neurologist, Dr. Elias Dickerman, to review Mr. Ziavras' medical records. Dr. Dickerman concluded on March 25, 2004 that he was capable of full time sedentary activities. A true copy of Dr. Dickerman's report is attached hereto as Exhibit E.

14. Standard terminated LTD benefits effective May 10, 2004.

15. Standard on June 14, 2004, after completing its administrative review, upheld the decision to terminate LTD benefits effective May 10, 2004 again based largely on Dr. Dickerman's analysis and the vocational assessment.

16. Standard, on multiple occasions, advised plaintiff that receipt of social security disability benefits could result in an overpayment of LTD benefits under the Plan, and requested that plaintiff sign a Repayment Agreement.

17. Mr. Ziavras on February 14, 2004 signed a Repayment Agreement, which provides, in part:

> I understand that the receipt of or eligibility for other income or benefits may result in an overpayment of LTD benefits paid to me and that I am responsible for repaying any overpayment of LTD benefits. I agree to immediately repay Standard Insurance Company for any such overpayment.

A true and accurate copy of the Repayment Agreement is attached as Exhibit F.

18. On or about May 1, 2004, Mr. Ziavras was awarded disability benefits by the Social Security Administration in the amount of $1,566.70 per month,

effective March through November, 2003. In December, 2003, the Social Security Administration increased his benefit to $1,599.60 per month as a result of a Cost of Living Adjustment. On May 1, 2004, Mr. Ziavras received a total of $22,089.00 from the Social Security Administration for the period of March, 2003 through April, 2004. Because Mr. Ziavras received benefits from Standard through May 10, 2004 without a deduction for the original monthly award amount of $1,566.70 per month, as provided by the group policy, Mr. Ziavras received an overpayment from Standard in the amount of $22,483.22. To the best of my knowledge, to date Mr. Ziavras has not attempted to repay this amount owed to Standard.

_____
Patricia Roberts

Subscribed and sworn to before me on this 19th day of August, 2004.

_____
NOTARY PUBLIC

OFFICIAL SEAL
TRACI A DAMMAN
NOTARY PUBLIC–OREGON
COMMISSION NO. 345850
MY COMMISSION EXPIRES MAY 15, 2005